IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| John Doe and Jane Doe, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 20-cv-4273 |
| | ) | |
| | ) | |
| School District U-46, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>Memorandum Opinion and Order</u>

Plaintiffs John Doe and Jane Doe bring this action on behalf of their son, James Doe, a former student at Hillcrest Elementary School located in School District U-46 in Elgin, Illinois. Plaintiffs allege that in 2018, during James Doe's kindergarten year, he was subjected to bullying, physical assaults, and sexual assaults by four student offenders. Plaintiffs sued the school district and board of education, several teachers and administrators, and the student offenders and their guardians, alleging violations of substantive due process under 42 U.S.C. § 1983, violations of Title IX, willful and wanton misconduct, and various other state-law torts. The following defendants have now moved to dismiss the claims against them: School District U-46, School District U-46 Board of Education, and

educators/administrators Tony Sanders, Teresa Winters, Jeffrey Prowell, Nelly Gonzalez, Steve Johnson, and Gina Dawkins (collectively, "Defendants").  For the foregoing reasons, their motion to dismiss [20] is granted in part and denied in part.

I.

In reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I "accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012).  To survive a motion to dismiss, the complaint must state a claim "that is plausible on its face" after conclusory allegations are disregarded. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

During the 2018-2019 school year, James Doe was a kindergarten student at Hillcrest Elementary School ("Hillcrest") in the U-46 school district.  ECF No. 1 ¶ 24.  From August through December 2018, he was also enrolled in a before- and after-school childcare program called the "Supervised Activities for Children of Employed Parents" or "SAFE" program, which took place at Highland Elementary School ("Highland"), another school located within the U-46 school district.  *Id.* ¶¶ 25-27.  James Doe was transported from the SAFE program at Highland to Hillcrest and back again each day by a

school bus owned and operated by the U-46 school district. *Id.*
¶¶ 29-30.

On or about August 27, 2018, shortly after the start of the
school year, James Doe began to experience bullying from Student
Offender 1, a student in James Doe's class. *Id.* ¶¶ 64-65.
Specifically, Student Offender 1 pushed and punched James Doe on
more than one occasion. *Id.* ¶ 66. On September 6, 2018, James
Doe's father, John Doe, sent an email to James Doe's teacher at
Hillcrest, Nelly Gonzalez, informing her of the bullying incidents
with Student Offender 1. *Id.* ¶ 69. Ms. Gonzalez responded that
James Doe had mentioned that week that Student Offender 1 had hit
him, and she had spoken to both boys, but she "did not think much
of it." *Id.* ¶ 72. She said she would speak to the boys again.
*Id.*

In October, Student Offender 1's bullying of James Doe
escalated, such that it now included kicking and persistent name
calling. *Id.* ¶ 88. Student Offender 2, an older boy in sixth
grade, also began bullying James Doe. *Id.* ¶ 90-91. On one
occasion on October 5, Student Offender 2 took James Doe's shoes
off and threw them down the hallway during the SAFE program. *Id.*
¶ 91. On October 12, 2018, John Doe again contacted Ms. Gonzalez,
leaving a voicemail informing her of the continued incidents of
bullying involving Student Offender 1 and commencement of bullying
by other students including Student Offender 2. *Id.* ¶ 92. Ms.

Gonzalez responded, via email, that she had informed the MTSS coordinator and the physical education teacher of the situation, and that the MTSS coordinator would talk with the boys. *Id.* ¶ 94.

On October 16, 2018, while travelling on the school bus, Student Offender 1 bullied James Doe once again, taunting him by announcing that his "butt smell[ed] bad" and he wore "baby underwear." *Id.* ¶ 99. James Doe sought help from an older female student, Student Offender 3. *Id.* ¶ 102. Student Offender 3 said that she would only help James Doe if he paid her. *Id.* ¶ 103. James Doe was carrying two dollars, which was to be used for a fundraiser at the SAFE program, so he gave Student Offender 3 one of the two dollars. *Id.* ¶ 100, 104. Student Offender 3 grabbed Student Offender 1 by the legs and told him to "stop bothering" James Doe. *Id.* ¶ 104. Student Offender 2, who was acting as a student patrol guard on the bus and had witnessed the exchange with Student Offender 3, also offered his help to James Doe if he gave him his other dollar. *Id.* ¶ 105. Student Offender 2 accepted the dollar, but did not intervene. *Id.* ¶ 106.

The next day, John Doe called Theresa Winters, the principal at Hillcrest, to inform her of the ongoing bullying James Doe was experiencing. *Id.* ¶ 107. Principal Winters informed John Doe that she would personally take care of the situation, that she was going to require all students involved to be spoken to, that all the students' parents would be required to meet with her

4

personally, and that James Doe would not be bullied again. *Id.* ¶ 111. Principal Winters subsequently informed John and Jane Doe that Student Offender 1's and Student Offender 3's parents had been spoken to, and that Student Offender 2 had been suspended from patrol duties for a week. *Id.* ¶ 112. Principal Winters also directed that James Doe be moved to the front of the school bus, away from the "older kids." *Id.* ¶ 114. However, because Student Offender 2 was a student patrol, he was often one of the last students to enter the bus, and often sat near the front. *Id.* ¶ 115. Accordingly, Plaintiffs allege that this intervention had the opposite of the intended effect. *Id.* ¶ 116.

From October 29, 2018 through December 14, 2018, James Doe was sexually assaulted daily on the bus at the hands of Student Offender 2 and Student Offender 4, a second-grade student who was friends with and sat near Student Offender 2 on the bus. *Id.* ¶¶ 117-18. Each day, Student Offender 2 and Student Offender 4 would come to the seat where James Doe was sitting, "take turns positioning themselves such that one of them would block the school bus driver's view of what was occurring on the bus," and engage in various sexually harassing and bullying activities. *Id.* ¶¶ 119-121. These activities included exposing their penises and buttocks to James Doe, forcing James Doe to touch their penises, forcing James Doe to remove his pants to expose his underwear and then

5

making fun of the underwear he was wearing, and touching James Doe's penis and making fun of it. *Id.* ¶ 121.

On the evening of December 14, 2018, James Doe told his mother, Jane Doe, about the bullying and sexual assaults he had been experiencing on the bus each day. *Id.* ¶¶ 123-24. James Doe said he had not said anything to his mother earlier because "he was scared, and . . . Student Offender 4 had told James Doe that Student Offender 4 would continue to do the things he was doing to James Doe even if James Doe told someone about it." *Id.* ¶ 125.

On Monday, December 17, John, Jane, and James Doe met with Principal Winters and discussed the bullying and sexual assault. *Id.* ¶ 127. Ms. Winters said that "her preliminary plan of action was to talk to Student Offender 2 and Student Offender 4, remove Student Offender 2 as student patrol, [and] require the parents for both Student Offender 2 and Student Offender 4 to pick up the boys at school that day so she could talk directly to their parents." *Id.* ¶ 132. She also said that she would ask the U-46 Transportation Department for the video from James Doe's December 14, 2018 bus rides. *Id.* Later that day, Ms. Gonzalez phoned Jane Doe to let her know that Principal Winters had informed her of the assaults, and added that James Doe had recently been acting "more clingy" with her. *Id.* ¶¶ 134-35.

On December 20, John Doe had a follow-up telephone call with Principal Winters. *Id.* ¶ 140. Principal Winters said that she

had seen the video of the December 14, 2018 bus rides, and that she would request copies of all videos from October 29 through December 14. *Id.* ¶¶ 141-42. Plaintiffs have since requested to see those videos, but their requests have been denied. *Id.* ¶ 143-44. Principal Winters also said that Student Offender 2 and Student Offender 4 admitted to her that they took part in the conduct James Doe described. *Id.* ¶ 145. She told John Doe that "Student Offender 2 had been permanently removed as a patrol, was removed from the school bus, and was removed from the SAFE Program for the rest of [the] school year," and "Student Offender 4 had been removed from the school bus and the SAFE program for 1 week." *Id.* ¶¶ 146-47.

When school resumed in January 2019, the Does removed James Doe from the SAFE program and enrolled him in a private childcare program that was twice the cost. *Id.* ¶¶ 150-51. Principal Winters told John Doe that she would be in James Doe's classroom several times a week to check on him. *Id.* ¶ 153. The Does also requested that James Doe see Hillcrest's social worker, Gina Dawkins, on a regular basis. *Id.* ¶ 156. However, after two weeks, Ms. Dawkins informed the Does that James Doe was doing very well and she did not need to see him anymore. *Id.* ¶ 158. Plaintiffs allege that contrary to Ms. Dawkins's representation, James Doe's behavior had changed dramatically as a result of the trauma he suffered and he needed continued support. *Id.* ¶¶ 159-60.

On January 17, 2019, James Doe went to the nurse's office, and Student Offender 2 entered the office and sat down next to him.  *Id.* ¶¶ 164-65, 167.  Student Offender 2 "placed his hand on James Doe's knee and massaged it making James Doe extremely uncomfortable."  *Id.* ¶ 168.

Plaintiffs also allege that in May 2019, the Does were approached by Adrianna Flores, who said that her son had also been the victim of bullying and sexual assaults perpetrated by Student Offender 2 and Student Offender 4 in Fall 2018 and Winter 2019, and that she had reported the incidents to Principal Winters in January 2019.  *Id.* ¶¶ 169-70, 172.  Ms. Flores said that Principal Winters denied the allegations and said that her son "was merely adopting James Doe's experience as his own," and also forbade Ms. Flores from discussing her son's experience with the Does.  *Id.* ¶¶ 173-74.  In October 2019, Ms. Flores reported to the Does that after a "fight" with the school district, her son had been allowed to transfer schools.  *Id.* ¶¶ 180-81.

At some point, the Does moved, and James Doe is now in school in another district.  *Id.* ¶ 183.

## II.

Plaintiffs sued both School District U-46 and the School District U-46 Board of Education.  As a preliminary matter, Defendants argue that the Board of Education is the only legal entity capable of being sued, so the claims against the School

8

District should be dismissed.  ECF No. 21 at 2.  Relying on 105 Ill. Comp. Stat. 5/10-2, which provides that a school district's board of education has the capacity to sue or be sued, "Illinois courts have held that while a school board is a proper defendant, a school district is not, unless another provision of the school code or another statute specifically authorizes a school district to sue or be sued." *Smoler v. Bd. of Educ. for W. Northfield Sch. Dist. #31*, No. 20-cv-00493, 2021 WL 843454, at *2-3 (N.D. Ill. Mar. 5, 2021); *accord Snow v. J. Sterling Morton High Sch. Dist. 201*, No. 16-cv-2685, 2016 WL 5391222, at *2 (N.D. Ill. Sept. 27, 2016).  Plaintiffs do not argue that any statute specifically authorizes the instant suit against the district.  Accordingly, the counts asserted against School District U-46 are dismissed.[1]

### III.

Defendants move to dismiss Counts II-III and Counts V-IX, which assert substantive-due-process claims under 42 U.S.C. § 1983 against the School District U-46 Board of Education; Tony Sanders, Superintendent of School District U-46; Jeffrey Prowell, the U-46 Director of Transportation; Theresa Winters, Principal of Hillcrest; Nelly Gonzalez, James Doe's teacher at Hillcrest; Steve Johnson, Principal of Highland; and Gina Dawkins, a social worker

---

[1] Counts I, XII, and XIII are accordingly dismissed in their entirety.  Counts XXV-XL are dismissed as asserted against School District U-46.

at Hillcrest.  Plaintiff sues each of the non-entity defendants both in their individual and official capacities.  As a preliminary matter, official-capacity suits are simply "another way of pleading an action against an entity of which an officer is an agent."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  Accordingly, because the U-46 School Board has also been sued, any official-capacity claims are duplicative and are thus dismissed.  *See, e.g.*, *Selmani v. Vill. of Bartlett*, 515 F. Supp. 3d 882, 2021 WL 271235, at *4 (N.D. Ill. 2021).

"In order to proceed on [a] § 1983 claim, [a plaintiff] need[s] to show that [defendants] acted under color of state law to deprive [him] of a constitutional right."  *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997).  The constitutional right on which Plaintiffs rely is the substantive-due-process component of the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "In contrast with procedural due process, substantive due process 'bars certain arbitrary, wrongful government actions "regardless of the procedures used to implement them."'"  *Doe v. Sch. Dist. 214*, No. 16-cv-7642, 2021 WL 1239200, at *7 (N.D. Ill. Apr. 2, 2021) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).  But the list of protected fundamental rights and liberty interests is "a short one."  *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012).

10

Plaintiffs assert that James Doe was deprived of two interests protected by substantive due process: (1) "a property interest in a K-12 public education," and (2) "a liberty interest in [James Doe's] own physical safety." ECF No. 37 at 3. James Doe "undoubtedly had a liberty interest in his own physical safety." *Stevens v. Umsted*, 131 F.3d 697, 701 (7th Cir. 1997). It is also true that "elementary school students . . . have a property interest in their public education because state law entitles them to receive one." *Doe v. Purdue Univ.*, 928 F.3d 652, 660 (7th Cir. 2019). Plaintiffs do not assert, however, that Defendants personally deprived James Doe of those interests--rather, they assert that James Doe was deprived of liberty and property because Defendants failed to protect him from the bullying and harassing acts of the Student Offenders. "But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. . . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989). Therefore, "the Due Process Clauses generally confer no affirmative right to government aid, even when such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196.

11

There are two exceptions to this general rule, however. "The first obligates the state to protect individuals with whom it has a 'special relationship,' such as a custodial relationship that cuts off alternative avenues of aid. . . . The other is the 'state-created danger exception,' which applies when a state actor's conduct 'creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been.'" *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citations omitted). Plaintiffs argue that both exceptions apply here.

The custodial relationship exception is easily dispensed with. For that exception to apply, "the individual must be involuntarily taken into custody by the state." *Stevens*, 131 F.3d at 702. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200. Here, the state never took custody of James Doe--rather, he was voluntarily admitted to Defendants' care. "Although [James Doe] could not have packed his bags and left the school of his own volition, [the Does], as [James Doe's] parent[s] and guardian[s], could have requested that [James Doe] be discharged at any time." *Stevens*, 131 F.3d at 703. Accordingly, a child in public school has not been "rendered . . . so helpless

12

that an affirmative constitutional duty to protect arises." *J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir. 1990). The custody exception does not apply.

Plaintiffs also argue that the state-created danger exception is applicable here. "To prevail under a state-created danger theory, [Plaintiffs] must show three things: (1) that the State . . . by its affirmative acts, created or increased a danger that [James Doe] faced; (2) that [Defendants'] failure to protect [James Doe] from danger was the proximate cause of [his] injury; and (3) that [Defendants'] failure to protect [James Doe] shocks the conscience." *D.S.*, 799 F.3d at 798. Plaintiffs falter at the first element--they fail to allege that Defendants engaged in an *affirmative* act that created or increased the danger to James Doe. "[A] school's inaction or inadequate response to bullying does not 'increase the danger' under a state-created danger due process theory." *Doe v. Evergreen Park Elementary Sch. Dist. 124*, No. 17-CV-3774, 2017 WL 6731867, at *6 (N.D. Ill. Dec. 29, 2017) (St. Eve, J.); *accord Nabozny v. Podlesny*, 92 F.3d 446, 460 (7th Cir. 1996); *Spruill ex rel. D.N.S. v. Bd. of Educ.*, No. 20 C 4927, 2021 WL 1387949, at *3 (N.D. Ill. Apr. 13, 2021).

Plaintiffs counter that Principal Winters's decision to move James Doe to the front of the bus was an affirmative action that placed him in closer proximity to Student Offender 2, and therefore increased his danger. ECF No. 37 at 9-10. But that action alone

13

is insufficient. In *D.S. v. East Porter County School Corp.*, a student brought a substantive-due-process claim against her school in connection with bullying she experienced at the hands of other students. Despite allegations that school personnel participated in or were complicit in the bullying incidents, such as by laughing when her classmates moved her desk as a prank or by forcing her to participate in gym class while she was injured, the Seventh Circuit rejected application of the state-created danger exception because plaintiffs had not shown "that her teachers and coaches instigated, created, or increased the bullying she experienced in school." 799 F.3d at 798-99. Here, Plaintiffs have alleged significantly less affirmative conduct on the part of Principal Winters.

Moreover, the Seventh Circuit has cautioned that the exception's requirement that the affirmative action "create or increase" danger "must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015) (citation omitted). Generally, for the exception to apply, the victim must be "safe before the state intervenes and unsafe afterward." *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 598 (7th Cir. 2008); *see also Spruill*, 2021 WL 1387949, at *5. Here, James Doe alleges that he was bullied by Student Offender 2 on the bus both before and after he was moved to the front--accordingly, it was not Principal Winters's

14

intervention that rendered him unsafe. *See* ECF No. 1 ¶¶ 105-06, 114, 117. The state-created danger exception does not apply.

Because Plaintiffs have not alleged an underlying constitutional violation, they fail to state a claim under 42 U.S.C. § 1983. Counts II-III and Counts V-IX are dismissed.

IV.

Count XIV asserts a claim against the District U-46 Board of Education under Title IX, 20 U.S.C. § 1681 *et seq*. In *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, the Supreme Court established that school boards who receive federal funding can be sued by victims of student-on-student sexual harassment under Title IX. 526 U.S. 629, 648. Schools are responsible for one student's sexual harassment of another where three conditions are met: "First, the school or school officials must have had actual knowledge of sex-based harassment. . . . Second, the harassment must have been 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.' . . . Third, the school must have been deliberately indifferent to the harassment." *Jauquet v. Green Bay Area Catholic Educ., Inc.*, 996 F.3d 802, 808 (7th Cir. 2021).

Defendants do not dispute that the alleged harassment complained of was severe and pervasive enough to satisfy the second element. *See* ECF No. 37 at 14. There is also no dispute that

15

Defendants had notice of the sex-based harassment James Doe faced. The parties do dispute, however, *when* Defendants had that notice. The timing of the notice is important because "[o]nce school officials have actual notice of sexual harassment, *Davis* imposes a duty to act." *Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 824 (7th Cir. 2003).

The relevant inquiry under Title IX is notice of *sex-based* harassment; notice of general bullying behavior does not trigger an obligation under *Davis*. *See Evergreen*, 2017 WL 6731867, at *4-5. "School administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014).

Defendants argue that they had notice of the sexual harassment James Doe experienced at the hands of Student Offenders 2 and 4 on December 17, 2018, when the Does reported the incidents to Principal Winters. Before that time, James Doe was "scared" to talk about the harassment, and had not reported it, even to his parents. ECF No. 1 ¶ 125.

Plaintiffs counter that the complaint supports a reasonable inference that the bus driver observed the sexual harassment before that time. But Plaintiffs specifically alleged that the Student Offenders "would take turns positioning themselves such that one of them would block the school bus driver's view of what was occurring on the bus." *Id.* ¶ 120. Plaintiffs argue they alleged

16

that the children on the bus were subject to "Rider Rules" which prohibited children from leaving their seats, *see id.* ¶ 49--accordingly, they argue, it is plausible that the bus driver noticed Student Offenders 2 and 4 leaving their seats to harass James Doe. But even if the bus driver did notice the students moving around, that does not support an inference that he also observed the harassment, particularly given how the Student Offenders positioned their bodies to block the driver's view. Plaintiffs also argue that the administrators' failure to give them copies of the bus videos supports an inference that those videos show the bus driver witnessing the harassment and failing to intervene. But there are myriad other reasons that the administrators may not have wanted to share those videos with Plaintiffs. I conclude that Plaintiffs failed to plausibly allege Defendants had notice of the sexual harassment prior to December 17, 2018.

Defendants argue that assuming they had notice as of December 17, Plaintiffs have failed to allege deliberate indifference. "To ensure that school administrators continue to enjoy the flexibility they require in making disciplinary decisions, the school will not be held liable unless its response to harassment is clearly unreasonable in light of the known circumstances." *Jauquet*, 996 F.3d at 808 (citing *Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 911-12 (7th Cir. 2020)). This is a high bar; allowing

17

peer-on-peer sexual harassment suits under Title IX "does not mean that recipients [of federal funds] can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action," nor does it allow victims "to make particular remedial demands." *Davis*, 526 U.S. at 648. Rather, "[C]ourts should refrain from second-guessing disciplinary decisions made by school administrators." *Id.* Additionally, "there is no reason why courts, on a motion to dismiss, . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Id.* at 649.

Here, Defendants' response to the December 17 report of harassment was not clearly unreasonable. Principal Winters promptly spoke with Student Offenders 2 and 4 and their parents, and when they admitted their part in the harassment, she disciplined them, and took steps to keep them away from James Doe. ECF No. 1 ¶¶ 132, 145-47. Specifically, "Student Offender 2 [was] permanently removed as a patrol, was removed from the school bus, and was removed from the SAFE Program for the rest of [the] school year," and "Student Offender 4 [was] removed from the school bus and the SAFE program for 1 week." *Id.* ¶¶ 146-47. Principal Winters also promptly viewed the bus video from December 14, 2018, and requested the videos from the other days on which James Doe said he was harassed. *Id.* ¶¶ 132, 141-42. In addition, she personally observed James Doe's classes for several days after he

18

returned to school in January, and the school provided James Doe with approximately two weeks of counseling. *Id.* ¶¶ 153, 156, 158. "This is not a situation where the school 'learned of a problem and did nothing.'" *Jauquet*, 996 F.3d at 809 (citing *Johnson*, 972 F.3d at 912). The school's response "demonstrate[d] that the school was not deliberately indifferent to [James Doe's] harassment." *Id.* The Does may feel that the school's interventions were insufficient, or even negligent, but "[a] negligent response is not unreasonable," and courts generally may not "second guess a school's disciplinary decisions." *Johnson*, 972 F.3d at 912.

Plaintiffs argue that they alleged Defendants tried to "cover up" Student Offenders 2 and 4's harassing conduct by forbidding Ms. Flores from discussing her child's alleged harassment with the Does. ECF No. 37 at 18. But assuming that allegation is true, it tends to show deliberate indifference to Ms. Flores's child's harassment, not to James Doe's. "To establish a Title IX discrimination claim arising from student-on-student sexual assault or harassment, . . . the school's deliberate indifference must have caused *the plaintiff* to undergo harassment or make that student vulnerable to it." *Pogorzelska v. VanderCook Coll. of Music*, 442 F. Supp. 3d 1054, 1062 (N.D. Ill. 2020) (emphasis added); *see also Wills v. Brown Univ.*, 184 F.3d 20, 27 (1st Cir. 1999) (upholding exclusion of evidence of university response to

professor's subsequent harassing behavior because it had "nothing to do with" the question of University's alleged deliberate indifference to plaintiff's earlier harassment).  Ms. Flores did not report her child's harassment to the school until *after* James Doe was sexually harassed on the school bus, *see* ECF No. 1 ¶ 172, and there is no allegation that Defendants' response to Ms. Flores's child's harassment caused James Doe to undergo additional harassment or increased his vulnerability.  Accordingly, I decline to conclude that Defendants' response to James Doe's harassment was clearly unreasonable.

Because Plaintiffs have not alleged deliberate indifference on the part of Defendants, Count XIV is dismissed.

V.

In Count XV, Plaintiffs assert a Title IX retaliation claim against the District U-46 School Board.  They allege that the Board retaliated against Plaintiffs for reporting James Doe's harassment by failing to protect James Doe from future harm.  ECF No. 1 at 103, ¶¶ 190-91.  To establish a Title IX retaliation claim, Plaintiffs must allege: "(1) [James Doe] engaged in a statutorily protected activity; (2) [Defendants] took a materially adverse action against [him]; and (3) there existed a but-for causal connection between the two." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017).  Accordingly, "[a] Title IX [retaliation] claim fails if the plaintiff has not alleged

some 'retaliatory motive' connecting the protected activity to the adverse action." *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 960 (N.D. Ill. 2017), *aff'd*, 933 F.3d 849 (7th Cir. 2019).

Plaintiffs' retaliation claim must be dismissed because Plaintiffs have alleged no retaliatory motive for failing to protect James Doe. Plaintiffs' own allegations establish that teachers and administrators reacted with concern and took corrective action each time they received reports of bullying or harassing behavior. *See, e.g.*, ECF No. 1 ¶¶ 72, 94, 111, 141-42, 145-47, 153. There are simply no plausible allegations of any animus on the part of the School Board resulting from James Doe's reports of harassment. Accordingly, Count XV is dismissed.

VI.

Defendants next move to dismiss Counts XVI-XVII, XIX, and XXI-XXIII, which assert claims against Defendants Theresa Winters, Nellie Gonzalez, Steve Johnson, Gina Dawkins, Tony Sanders, and Jeffrey Prowell for willful and wanton misconduct for failure to ensure student safety from physical violence. Defendants argue first that the claims are barred by various provisions of the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("the Tort Immunity Act"), 745 Ill. Comp. Stat. 10/1-101 *et seq.*, and secondly that Plaintiffs fail to state a claim.

Turning first to the question of immunity, Defendants argue that Sections 2-103 and 2-205 of the Tort Immunity Act apply.

Those sections prohibit liability for public entities and employees for failure "to enforce any law." 745 Ill. Comp. Stat. 10/2-103; 745 Ill. Comp. Stat. 10/2-205. Plaintiffs allege that Defendants were willful and wanton in part because they failed to enforce four policies: the U-46 school district anti-bullying policy, the Rider Rules and Bus Safety Standards regarding transportation of students via bus, and the SAFE School Year Guidelines, which included, in part, a bullying policy. *See* ECF No. 1 ¶¶ 32-63. Defendants contend that they are immune from those claims under Sections 2-103 and 2-205.

The policies in question, however, are not "laws" such that failure to enforce them would qualify as conduct governed by Sections 2-103 and 2-205. *See Reyes v. Bd. of Educ.*, 139 N.E.3d 123, 133-35, 137 (Ill. App. Ct. 2019) (finding no immunity under §§ 2-103 and 2-205 for failure to enforce transit and sexual harassment policies following student sexual assault on bus). Defendants maintain that at least the anti-bullying policy is properly considered a law because under the Illinois School Code, school districts are required to "create, maintain and implement a policy on bullying." 105 Ill. Comp. Stat. 5/27-23.7(d). But "[n]ot everything passed by the Board is a law under the Act." *Reyes*, 139 N.E.3d at 135. The fact that school boards are legally required to have a bullying policy does not necessitate that the

22

policy has the force of law.  I decline to conclude that Defendants are immune under Section 2-103 or 2-205.

Defendants argue next that Section 4-102 bars their claims. That section provides:

> Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals.

745 Ill. Comp. Stat. 10/4-102.  Section 4-102 does not apply here because Plaintiffs do not allege that Defendants failed to do any of the above.  First, there is no allegation that Defendants failed to provide police protection to James Doe.  Second, under the plain language of the statute, "immunity for failure to prevent a crime [only] attaches '*if police protection service is provided*,'" *Doe ex rel. Ortega-Piron v. Chi. Bd. of Educ.*, 820 N.E.2d 418, 421 (Ill. 2004) (emphasis in original), and there is no allegation here that the teacher and administrator Defendants functioned as police by "provid[ing] services performed by police personnel such as 'weapons detection, traffic control, and crowd security and control.'"  *See Reyes*, 139 N.E.3d at 139 (no Section 4-102 immunity

23

where teacher and bus aide defendants allegedly failed to protect student from sexual assault on school bus); *see also Ortega-Piron*, 820 N.E.2d at 423 (school board was not providing 'police protection service' under Section 4-102 by providing bus attendant); *Doe v. Bd. of Educ.*, No. 19 C 00263, 2020 WL 1445638, at *14 (N.D. Ill. Mar. 24, 2020) (no immunity for school board under Section 4-102 where disabled student was allegedly sexually assaulted by school employee in shower). Section 4-102 is inapplicable.

Defendants also argue that Section 3-108 immunizes their conduct. That section provides immunity for public entities and employees who supervise an activity on public property. 745 Ill. Comp. Stat. 10/3-108. However, "[W]illful and wanton conduct is not protected by the immunity conferred in section 3-108." *Ortega-Piron*, 820 N.E.2d at 423. As Plaintiffs have alleged willful and wanton conduct on behalf of Defendants, Section 3-108 does not apply. *See, e.g.*, *Doe*, 2020 WL 1445638, at *14.

Finally, Defendants contend that the claims against them are barred by Section 2-201, which provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of discretion even though abused." 745 Ill. Comp. Stat. 10/2-201. "The provision requires an inquiry into both the public

24

employee's position and the nature of the action challenged in a lawsuit. . . . For section 2-201 to apply, the employee's position may involve either formulating policy or exercising discretion; the particular act or omission challenged must be *both* a determination of policy and an exercise of discretion." *Albers v. Breen*, 806 N.E.2d 667, 675 (Ill. App. Ct. 2004) (emphasis in original). "Policy decisions are those that require a governmental entity to balance competing interests and make a judgment call as to what solution will best serve those interests." *Reyes*, 139 N.E.3d at 140. "Discretionary acts are 'unique to a particular office,'" and "[d]iscretion 'connotes a conscious decision.'" *Id.* (citations omitted). In contrast, "a ministerial act is one 'which a person performs on a given set of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act.'" *Doe I v. Bd. of Educ.*, 364 F. Supp. 3d 849, 867 (N.D. Ill 2019) (citing *Hascall v. Williams*, 996 N.E.2d 1168, 1176 (Ill. App. Ct. 2013)).

The distinction between discretionary and ministerial acts "'resists precise formulation' and can be made only on the particular facts established in a particular case." *Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 923 (C.D. Ill. 2009) (citing *Snyder v. Curran Twp.*, 657 N.E.2d 988, 992 (Ill. 1995)). Accordingly, "[i]t is difficult to draw generalizations from case

law applying Section 2-201." *White*, 627 F. Supp. 2d at 922 (collecting cases). Moreover, application of Section 2-201 is an affirmative defense, so "defendants have the burden of proof on the issue and plaintiffs need not address it in their complaint." *S.G. v. Rockford Bd. of Educ.*, No. 08 C 50038, 2008 WL 5070334, at *8 (N.D. Ill. Nov. 24, 2008); *see also Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 285 (Ill. 2003). As a result, and due to the fact-intensive nature of the necessary analysis, courts often refuse to grant immunity under Section 2-201 at the motion-to-dismiss stage. *See, e.g.*, *Doe I*, 364 F. Supp. 3d at 867; *White*, 627 F. Supp. 2d at 923; *S.G.*, 2008 WL 5070334, at *8; *see also Van Meter*, 799 N.E.2d at 286 (reversing dismissal under Section 2-201 because whether defendants' actions were discretionary was not apparent from complaint).

I conclude that Defendants have not met their burden to establish that Section 2-201 applies at this early phase of proceedings. As noted above, a Section 2-201 analysis requires an inquiry into the public employees' positions, and here, "[t]he job titles of Defendants are in the records, but there is no information about the delineation and scope of their duties." *White*, 627 F. Supp. 2d at 923. Thus, it is not possible to evaluate whether each of the defendants had discretion to decide the manner in which complaints of bullying or abuse should be handled, or whether the decisions they made were unique to the positions they

held. It is also not clear from the complaint what competing interests the defendants balanced, if any. It may well be that some or all of the claims are barred by Section 2-201, but it is simply too early to make that determination.

Because the willful and wanton claim is not barred by the Tort Immunity Act at this stage, I turn to the merits. "Under Illinois law, a plaintiff pleading willful and wanton misconduct must establish the same basic elements of a negligence claim, which are the existence of a duty, breach of that duty, and an injury proximately resulting from the breach." *Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010). "A willful and wanton claim has the additional requirement that the breach be not merely negligent, but with 'conscious disregard for the welfare of the plaintiff.'" *Id.* (citing *Ortega-Piron*, 820 N.E.2d at 423). Circumstances indicating such a disregard for the safety of others include "failure, after knowledge of impending danger, to exercise ordinary care or prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by ordinary care." *Doe*, 2020 WL 1445638, at *15 (citing *O'Brien v. Twp. High Sch. Dist. 214*, 415 N.E.2d 1015, 1018 (Ill. 1980)) (emphasis omitted). Unlike in the Title IX context, sex-based harassment is not the only relevant conduct, and a plaintiff may state a claim "based only on the

defendant's knowledge of the *risk* of misconduct." *Id.* (emphasis in original).

Defendants argue first that Plaintiffs have failed to plead the existence of a duty to protect. ECF No. 21 at 8-9. It is true that "a person ordinarily 'has no duty to act affirmatively to protect another from criminal attack by a third person.'" *Doe-2*, 593 F.3d at 514 (citing *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007)). However, "a school district with unique knowledge that one of its teachers or students poses a particular threat to another student may acquire a duty to protect." *Id.* at 515 (collecting cases). Here, Plaintiffs allege that they reported to Defendants multiple times that James Doe was being bullied, including by Student Offender 2. Accordingly, they allege Defendants had unique knowledge of the danger Student Offender 2 posed to James Doe, which supports imposition of a duty to protect.

Defendants also contend that Plaintiffs failed to allege Defendants acted with conscious disregard for James Doe's welfare. ECF No. 21 at 9-10. But again, Plaintiffs allege that the Does complained multiple times that James Doe was experiencing bullying and harassment, including by Student Offender 2, but the harassment was allowed to continue. "These averments of fact are sufficient to present jury questions as to the knowledge of [Defendants] and the foreseeability of harm to [James Doe], and, thus, the issue of willful and wanton conduct." *Ortega-Piron*, 820 N.E.2d at 424; *see*

*also Doe*, 2020 WL 1445638, at *15 (Plaintiffs stated willful and wanton claim where school board had no notice of employee's prior sexual misconduct, but knew employees were not subjected to background checks or consistently trained, suggesting danger of employee misconduct).

For all these reasons, I decline to dismiss Counts XVI-XVII, XIX, and XXI-XXIII.

VII.

Defendants next move to dismiss Counts XXVI, XXVIII, XXX, XXXII, XXXIV, XXXVI, XXXVII, and XL, which assert claims against the U-46 School Board for willful and wanton conduct for failure to train for anti-bullying Theresa Winters, Nelly Gonzalez, Steve Johnson, Gina Dawkins, Jeffrey Prowell, the Unidentified School Bus Driver, Ms. Lenore (an unidentified SAFE program employee), and Mamie Carter (the SAFE program coordinator). They also move to dismiss Counts XLI-XLVIII, which are asserted in the alternative against Tony Sanders for willful and wanton conduct for failure to train for anti-bullying each of the above defendants.

Defendants first argue that Section 2-201 of the Tort Immunity Act bars these claims because decisions regarding anti-bullying training for employees are discretionary. As a threshold matter, while these claims are brought in part against the U-46 School Board, Section 2-201, by its terms, immunizes only "public employee[s]." 745 Ill. Comp. Stat. 10/2-201. However, under

29

Section 2-109, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 Ill. Comp. Stat. 10/2-109. Accordingly, "[t]ogether with § 2-201, § 2-109 provides public employers with immunity against allegations that challenge discretionary policy determinations of their employees." *S.G.*, 2008 WL 5070334, at *8 (citing *Murray v. Chi. Youth Ctr.*, 864 N.E.2d 176, 185-86 (Ill. 2007)).

However, for the reasons discussed above, I decline to dismiss these claims on Section 2-201 grounds. Liability here is premised on the underlying public employees' duties, scope of responsibility, and applied discretion, and that analysis must rest on more than the complaint here--it must rest "on the particular facts established" as the case progresses. *See White*, 627 F. Supp. 2d at 923.

Defendants also argue Plaintiffs failed to establish a legal duty to train. "Whether a defendant has a duty to train its employees is . . . best analyzed under principles generally applicable to negligence cases." *McNerney v. Allamuradov*, 84 N.E.3d 437, 452 (Ill. App. Ct. 2017). "The touchtone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Vancura v. Katris*, 939 N.E.2d 328, 347 (Ill. 2010)

(citation omitted). "The inquiry involves four factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden on the defendant." *Id.* Applying these factors, at least one Illinois court recognized that a taxicab company owed a duty to train its drivers to avoid the possibility of passenger sexual assault. *McNerney*, 84 N.E.3d at 452. Educators and administrators certainly have at least as great an obligation to prevent sexual assault of minor students in their care. Accordingly, I decline to find that Plaintiffs failed to allege a duty to train on the part of Defendants. The motion to dismiss Counts XXVI, XXVIII, XXX, XXXII, XXXIV, XXXVI, XXXVII, and XL-XLVIII is denied.

## VIII.

Finally, Defendants moved to dismiss Counts XXV, XXVII, XXIX, XXXI, XXXIII, XXXV, XXXVII, and XXXIX, which assert claims against the School Board for vicarious liability as to Theresa Winters, Nelly Gonzalez, Steve Johnson, Gina Dawkins, Jeffrey Prowell, as well as the Unidentified School Bus Driver, Ms. Lenore, and Mamie Carter. Defendants argued only that the Board cannot be vicariously liable if Plaintiffs have failed to state a claim against the underlying employees. *See* ECF No. 21 at 15 (citing *Carey v. K-Way, Inc.*, 728 N.E.2d 743, 748 (Ill. App. Ct. 2000)).

Because I do not dismiss the willful and wanton claims against the individual employees, however, that argument is moot.

IX.

For the foregoing reasons, the motion to dismiss [20] is granted in part and denied in part. Claims I, XII, and XIII, which were brought against School District U-46, are dismissed in their entirety. Counts XXV-XL are dismissed as asserted against School District U-46. The § 1983 claims asserted against Defendants, Counts II-III and Counts V-IX, are dismissed. The Title IX claims asserted against the U-46 School Board, Counts XIV and XV, are also dismissed. The remaining claims may proceed.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 27, 2021